I'm John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent Wade Lafley. The condition of supervised release prohibiting Mr. Lafley from using marijuana substantially burdens his free exercise of religion. The district court rejected that argument, and in doing so, it presumed that there was a substantial burden on Mr. Lafley's religion, but then it determined, presuming those facts, that there was a compelling government interest that was imposed in the least restrictive manner that warranted the burden. What the district court did not do is substantiate its holding. It did not explain what the compelling government interests were. What's our standard of review? De novo, Your Honor, in terms of the ultimate issue. So we could take a completely different approach then, presumably, and I guess the question that I have is what in the record demonstrates the sincerity and genuineness of a religious belief? In terms of Mr. Lafley particularly, he allocated to the court and said that he was spiritually moved to marijuana, and I quote, he said, allow me to my sacraments, my religious beliefs, my religious callings. There was testimony from two leaders of the church of the religion in Montana that the sacrament is marijuana, and the crux of the religion is that by using marijuana, smoking marijuana, it connects the individual participant to God. And in terms of judging Mr. Lafley's sincerity, the case law is replete with instructions that you can't hold him to the standards that we would perhaps hold a member of the bar, a member of the judiciary, and I think Mr. Lafley in particular has to be given some slack, some deference, because he is, I believe, a high school graduate, he's a military veteran, but beyond that, he spent most of his life in prison. Right, so he gets convicted of conspiracy to distribute meth, he gets busted for marijuana use, for drinking, for driving with a suspended license, he's given two or three chances. On his last chance, he converts to this religion. Yes, he's given, I would say, two chances. Why doesn't that count? Why shouldn't we consider all that in judging his sincerity? I think you can consider that. And with respect to his sincerity, when you asked the standard of review, Judge Graber, I was referring to the ultimate decision. In terms of the facts, here the district court presumed that Mr. Lafley's religious beliefs were sincere. But that's for the purpose of deciding on another ground, but it doesn't constitute a factual finding that he was sincere. It does constitute a factual finding, because otherwise... I think Judge Malloy was just assuming for the sake of argument, as the way I took it. I don't think he was making a finding. I would agree. Excuse me, Your Honor. No, I would agree. Judge Malloy, I believe the order said, presuming religious sincerity and a substantial burden on the free exercise, the ruling is that there's a compelling government interest that's imposed in the least restrictive manner. So we would agree, I would agree, it was a presumption. But for review purposes, that was the state of the factual findings. So what, in your view, what does one have to establish to show that this is a recognized religion? It's not Rastafarianism. It's connected loosely with a group in Hawaii that has since been disbanded, I understand. I believe the founder of the religion in Hawaii, he's been federally indicted. Along with 14 others. Yeah. So what does that leave you? Well, in terms of determining whether this is a religion, that's where the Myers case from the Tenth Circuit is instructive, and the circuit borrowed from the district court's decision in laying out all sorts of considerations, such as, does the religion have a metaphysical perspective? Does it have a comprehensive set of beliefs? Does it have a structure? And we've briefed all that. And here, in terms of the Myers test, the Montana Cannabis Ministries meets every one of those tests, except for, I think, clothing. There was no testimony from the two leaders of the Montana branch of Cannabis Ministry that any particular clothing was involved with their religion or their religion services. Well, the testimony about what the belief system was was a little hard to understand, I must say. I will agree. If you look on the brief, I had an intern spend all summer basically trying to take their testimony and present it to the court in an accurate and comprehensible form. But they repeatedly testified that the core of the religion was using marijuana to connect with God, and that marijuana was their sacrament. And, Your Honor, you mentioned Rastafarianism. Basically, in Rastafarianism, as reflected in the case law in the Israel case from the Seventh Circuit, which, by the way, has a mistaken focus, which I think O. Centro, the Supreme Court decision, clearly reveals, Israel kept talking about generalities. It didn't use the word slippery slope. It did have that great phrase that if we let Mr. Israel do this, there will be like a weed-like proliferation of marijuana use by supervisees. That's not the focus under the strict scrutiny test that RFRA adopts. But Rastafarianism there, in Valerie, a case from the district court in western Washington, and in Israel, Rastafarianism, marijuana is the sacrament to connect the individual religion adherent to God. Here, it's the same thing. And if there was one thing that did shine through clearly from the testimony of two witnesses, that marijuana is the sacrament that connects the believers of the religion to God. They were abundantly clear on that. And, again, Mr. Lafley, in his inarticulate, yet somewhat eloquent way, referred to the sacrament. He asked the district court to let him use his sacrament as part of his spiritual calling. So why shouldn't we follow the Seventh Circuit in Israel and say, look, this is supervised release. You can't violate the laws of the United States on supervised release. The government's interest in this is greater. And, as I understand, the Seventh Circuit then issued a flat rule of law that this was going to be prohibited. Again, I would contrast the Israel decision in the Seventh Circuit with the Valerie decision in the district court in western Washington and highlight that Ocentro focused the strict scrutiny analysis on the individual, not on generalities. And Israel dealt with generalities. Basically, if we let this person do it, and, again, that great phrase will be a weed-like proliferation, this is going to get out of control. The government tried to fill the void. Counseless, Judge Alston speaking. As I read Israel, it says the government has a proper and compelling interest in forbidding the use of marijuana. Furthermore, demanding that a convicted felon on parole abstain from marijuana use is a legitimately restrictive means for safeguarding this interest. And a judicial attempt to corroborate a religious exemption in this situation would be to seek vivid administrative problems with the probation office and open the door to a weed-like proliferation of claims for religious exemptions. How do you respond to that? Again, the Seventh Circuit is adopting the slippery slope, the chicken little, the sky will fall. If we let Mr. Israel do this, everyone or lots of people are going to want to do this, who are being supervised, and it will basically become untenable, an unmanageable situation. Instead, the proper focus is to look at the individual. And this court was clear in that in Callahan, where it said that the least restrictive means is the critical focus of this legal analysis, and that when the least restrictive means are considered, Ocentra was very clear, you can't look at the situation writ large, you have to look at this individual. And yes, Mr. Lafley does have this methamphetamine conspiracy distribution conviction for which he did approximately ten years in prison, but there was no evidence presented that when he uses marijuana in a very circumcised setting, being 200 miles where he lives for religious services purposes, that somehow that's going to interfere with proper supervision. May I ask one more question? I'll allow you a couple minutes for rebuttal. The district court said that you didn't raise the RFRA claim, but then went on to decide, perhaps anticipating your appeal. If you haven't presented it to the district court, why should we consider that preserved here? I know when the district court issued its order saying that we did not raise RFRA, I was surprised. The district court, in its oral adjudication, brought up RFRA. It referred to it as, I believe, the Religious Freedom Act. It's cited to the Israel case. It never invited argument after we presented our witnesses. I think the district court, my characterization would be, was very dismissive of this claim. And then when the court did ask whether there were any objections generally to the sentence, I specifically referenced the religious freedom argument that the court had addressed. So I thought we were clearly objecting to the district court's RFRA ruling because it orally ruled on RFRA, and then I referenced that when the court asked for objections generally. Okay. Thank you. Thank you, Your Honor. Mr. Johnson? Good morning, Your Honor, and may it please the Court, Leif Johnson from the United States, from the District of Montana. Good morning, Judge Nelson. Good morning. I'd like to respond very briefly. As Your Honor is aware, a First Amendment claim was raised at the hearing in the court below. So the district court didn't have the prima facie element issue in front of it, at least as it was deciding and running through the hearing. I think that's fairly important because I think this court can affirm on the basis of saying the record is complete on the issues of the prima facie elements, and I think that the court can make reference to some of those issues from that record. I suppose it is tempting in a sense because the defendant did present evidence. On the other hand, the district court didn't make findings. And in a normal course, if we were inclined to take that route, we'd remand and have the district court actually make findings. Why shouldn't we take that approach in this case? Your Honor, because the defense didn't bring it up or because Mr. Lafley didn't bring it up, if you reviewed it for plain error, there is no effect on the substantial rights because I think this court can conclude from the record as it stands that this isn't a religion. If you look at the record on page 63, I'm just going to read to you just a very short portion. This is Witness Leibenguth responding to questions about, well, you know, the court was very curious about this. Is this a religion? And he said, it's a religion based off of our brother branch from Hawaii, so it's not the Montana Cannabis Ministry itself is not the religion. We go back to the Hawaii Cannabis Ministry, and then they use all the religions as a backing for them. So what the witness here, the head minister of the Montana Cannabis Ministry, was saying is that this is an amalgamation of all religions. This is an amalgamation that uses cannabis as a tool or a catalyst for a greater religious experience, but they don't have a unified set of beliefs. They don't have comprehensive beliefs. It is only built around the catalyst or tool of using marijuana to bring out a religious experience. I also want to address very briefly the court's ruling in this case on a compelling interest standard because I think that's important as well here. I think the court was correct in making that ruling, although one portion of that ruling is overruled by the Ocentro decision, and that's the first reason that the district court relied on that the Controlled Substances Act is not subject to exemption. It is. As the Supreme Court held in Ocentro, there are exceptions within the law, and there's even a religious exception for Native Americans using peyote. Nonetheless, that shouldn't affect this case, and I say that because there was no need to rely on the Controlled Substances Act in making this ruling. The operative statute that directs the district courts to apply standard conditions of supervision is 18 U.S.C. section 3583 sub D, and it's important that you look at that statute. It is not cited in our brief, but it's cited in some of the cases, particularly the Valray decision. And that statute says that the court shall order as an explicit condition of supervised release that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant shall not unlawfully possess a controlled substance.  And doesn't that beg the question, though, because it says it can't be unlawful, and if there's an exemption for religious purposes, then it wouldn't be unlawful. So it seems potentially circular. It's potentially circular in that sense. But this statute requires the court to impose the standard condition, and that's what the defendant objected to. Mr. Laughley objected to the standard condition in this case, which is you shall not unlawfully possess a controlled substance. So if he could lawfully possess it, then that standard condition wouldn't affect him. Also on the compelling interest test, the Court was correct in that the Yosentro decision leaves open the uniform application of statutes like 3583 that require uniform application to make a program work. And that was what the district court was all concerned about. Is that if we give an exception in this case, my program of supervision in my court does not work. I mean, that was what was coming through the district court's ruling. And that's an important concept for this Court. It was an important part of the compelling interest test. This Court has held many times, and the Supreme Court has held many times, that probationers are a different class of citizen. Probationers are people who are more likely to commit future crimes. This Court has said that. This Court has said that the government's compelling interest in reintegrating those people into society and to protecting the public at the same time justifies restrictions on their very most fundamental rights, rights like the right of privacy, the right to be free of searches without a warrant, the right to bear arms. They lose a number of those or have restrictions on a number of those rights by being probationers. And the Court's compelling interest supports the uniform application of a rule that both helps reintegrate those probationers and protect society. That's an important ruling. So what do you make of Judge Zilley's order in the Western District of Washington? He made a – carved out an exception for Rastafarianism. What should we make of that? Your Honor, I think the Court in that case misread what 3583 requires. I think if you look at that decision, there is no thoughtful analysis of what – that 3583 is a directive to the district court that it shall order that condition. And I think that the district court also did not consider, as the Seventh Circuit did in Israel, the larger consequences here. And in this case, I think we have a big difference, obviously, because we have an individual who needs this type of rehabilitation. But to answer your question on the Rastafarian issue, I do think that is a different circumstance. I do think that a court could, in a Rastafarian situation, say we're still not going to do it because of potential problems in integrating the defendant back into society and protecting the public. And in the Israel case, the court mentioned some of those other compelling interests, and that was managing its supervision of other prisoners. Everybody's going to want to join that church. Obviously, that's going to be a problem here. But the larger issue is what happens if one of these – one of the people on supervision using marijuana gets into trouble? What happens if somebody gets hurt when he's intoxicated? The court has responsibilities not only to protect the individual rights of the probationer but also to protect the public, and it has to balance that. And I think under those circumstances, the court could very well say, as the court said in Israel, we're not going to allow it even for a Rastafarian purpose. But we don't need to reach that issue. But I gather if we did reach the issue in the case, you'd urge us to join the Seventh Circuit and just issue a per se rule, right? You know, I wouldn't, Your Honor. In this case, I would urge the court to first look at the factual circumstances on the prima facie elements. I think it's unfortunate that that wasn't handled in this case, and I think that's part and parcel of that it wasn't raised. But in the event that this Court reaches the compelling interest issue, I don't think a per se rule necessarily needs to come from this case because of the particularized circumstances of this defendant. I mean, this is a guy who's a drug felon. You know, this is a guy who hasn't done well on supervision. This is a guy who needs less exposure to, you know, these substances rather than more. So I do – I would urge the court in considering the compelling interest test that it is particularized in this case and that the court could affirm on that basis. All right. Any further questions from the panel? No. Thank you. We'll give you two minutes for rebuttal, Mr. Rhodes. Thank you. With respect to the suggestion of plain air, we objected in the district court on religious freedom grounds. The district court brought up RFRA, referred to I believe as the Religious Freedom Act in court, brought up Israel in court, and then issued a written order addressing RFRA and bringing up Israel again. So it's not plain air. In terms of supervised release law generally, there's a common rule of law that any supervised release term cannot entail a greater deprivation of liberty than necessary. So in terms of looking to 18 U.S.C. 3583, that's something that has to be considered. We cited that in our brief, and that's the essence of our argument. What's unusual about the posture of this case is it's coming up before there's been any violation. It's on the conditions themselves. And the condition on its face is basically follow the law. So why wouldn't one potential answer be there's nothing wrong with the condition and there may be an as-applied issue later if you have used marijuana in your view for religious reasons only and then were held to have violated your parole? Because it wouldn't necessarily come up even for a religious practitioner for the period of probation. So I guess I'm a little bit, and that distinguishes it I guess from Israel also and from some of the other situations. Why wouldn't that be a right answer? Because then Mr. Lafley could not freely exercise his religion. He basically is told you have a choice. Well, he's told to follow the law. And so the question, you know, if he has a valid exemption or the government decides not to pursue it or he doesn't engage in the behavior, it seems in a sense an abstract question I guess. Well, that's where you look to the RFRA statute itself. And if Mr. Lafley has to abstain or use as part of his religious practices but face the threat of violation of supervised release and imprisonment, RFRA has a provision that the course of action when your free exercise of religion is being substantially burdened is to seek judicial relief. So RFRA itself answers that question. And so we would not agree. And, in fact, RFRA I believe would not agree that the answer is wait and see if he's violated. Very good. Thanks so much for your arguments. The case here will be submitted for decision.
judges: Nelson D. W., Thomas, Graber